UNITED STATES BANKRUPTCY COURT
DISTRICT OF SOUTH DAKOTA

| | | |
|---|---|---|
| In re: | ) | Bankr. No. 09-10085 |
| | ) | Chapter 7 |
| BRENT JOSEPH BARTON | ) | |
| SSN/ITIN xxx-xx-0996 | ) | |
| | ) | |
| and | ) | |
| | ) | |
| DAWN FRANCINE BARTON | ) | |
| SSN/ITIN xxx-xx-8613 | ) | |
| | ) | |
| Debtors. | ) | |
| | ) | |
| DACOTAH BANK, a bank corporation | ) | Adv. No. 10-1004 |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| -vs- | ) | |
| | ) | DECISION |
| ABERDEEN FEDERAL CREDIT UNION, | ) | |
| a corporation | ) | |
| | ) | |
| Defendant. | ) | |

The matter before the Court is Plaintiff Dacotah Bank's complaint seeking a determination that its liens against a portion of the proceeds from the chapter 7 trustee's sale of certain items of personal property are senior to Defendant Aberdeen Federal Credit Union's liens against those proceeds. This decision and accompanying order shall constitute the Court's findings and conclusions under Fed.R.Bankr.P. 7052. As set forth below, the Court concludes it does not have subject-matter jurisdiction and must dismiss this adversary proceeding.

I.

In lieu of a trial, the parties elected to submit this matter on the following

stipulated facts:

1.    This adversary proceeding arises out of and is related to the Chapter 7 case <u>In re [Brent] Joseph Barton and Dawn Francine Barton</u>, Case No. 09-10085.  This adversary proceeding is brought pursuant to Bankruptcy Rule 7001.

2.    This Court has subject[-]matter jurisdiction under 28 U.S.C. §1334(b) and 28 U.S.C. §2201.  This is a core proceeding under 28 U.S.C. §157(b)(2)([K]).

3.    Venue is proper in this district pursuant to 28 U.S.C. §1408.

4.    Plaintiff Dacotah Bank [("Bank")] is a bank corporation in good standing, whose principal address is 308 S. Main Street, Aberdeen, South Dakota.  [Bank] has standing to bring this action.

5.    Defendant Aberdeen Federal Credit Union [("Credit Union")] is a federally-chartered credit union in good standing, whose principal office address is Roosevelt Street and 8th Avenue NE, Aberdeen, South Dakota.

6.    That Debtors above named filed for protection under Chapter 7 of the Bankruptcy act on May 1, 2009.

7.    That on May 1, 2009, Debtor Brent J. Barton was indebted to [Bank] in the amount of $41,122.71 pursuant to the terms and conditions of Promissory Note No. 5298347 . . . which said Debtor had signed and delivered to [Bank] on February 7, 2006.

8.    That at the same time Debtor Brent J. Barton signed [promissory note no. 5298347] (February 7, 2006), he also signed a Consumer Security Agreement . . . .  [The security agreement] secured the payment of the obligations described in [the security agreement] by granting [Bank] a security interest in a tractor described as a 2003 McCormick MX120 Tractor #332034.

9.    That the purpose of the loan evidenced by [promissory note no. 5298347] was to purchase a McCormick Tractor.  On March 29, 2006, Debtor purchased what was described in the Purchaser's Order . . . as "1 MTX 125 McCormick 332034" Tractor from Aberdeen Equipment Co.  A copy of the [purchase order] was provided to [Bank] at the time of, or shortly after, the purchase.

10.  That, prior to the purchase of the tractor and on February 7, 2006, the fact of [Bank]'s security interest in a McCormick Tractor (described as "2003 McCormick MX 120 Tractor Serial #332034") was electronically filed with the South Dakota Secretary of State . . . .

11.  That Debtors' Petition in bankruptcy lists only one McCormick Tractor.

12.  That [Bank] at no time satisfied the obligation evidenced by [promissory note no. 5298347] nor released its security interest in any of the collateral securing [promissory note no. 5298347].

13.  That on May 1, 2009, Debtor Brent J. Barton was indebted to [Bank] in the amount of $42,215.65 pursuant to the terms and conditions of Promissory Note No. 5303183 . . . .

14.  That when Debtor Brent J. Barton signed [promissory note no. 5303183] . . . he also secured the obligation described in [promissory note no. 5303183] by granting [Bank] a security interest in the following described personal property, to-wit:   1999 GMC Suburban (VIN 3GKFK16R1XG531783).

15.  That on May 1, 2009, [Bank]'s security interest in said 1999 GMC Suburban was perfected by appropriate notation on Certificate of Title No. 11949620 . . . .

16.  That Debtors' Petition in bankruptcy lists a "1999 GMC Suburban" among their personal property (Schedule B) subject to a "Farm Operating Loan and Auto Loan" in favor of [Bank] (Schedule D-Creditors Holding Secured Claims).

17.  That [Bank] at no time satisfied the obligation evidenced by [promissory note no. 5303183] nor released its security interest in the collateral securing [promissory note no. 5303183].

18.  That on or about September 26, 2009, the Chapter 7 Trustee conducted a sale of part of Debtors' estate and sold the only McCormick Tractor owned by Debtors for $43,000.00.

19.  That on or about September 26, 2009, the Chapter 7 Trustee conducted a sale of part of Debtors' estate and sold the only 1999 GMC Suburban owned by Debtors for $3,950.00.

20.  That the proceeds from the sale of the McCormick Tractor

(described in Paragraph 18, above) and the 1999 GMC Suburban (described in Paragraph 19, above) were turned over to [Credit Union].

21.  That [Bank] has made demand upon [Credit Union] for payment of the proceeds from the sale of said McCormick Tractor and the 1999 GMC Suburban[,] but [Credit Union] has at all times refused to pay such monies to [Bank] or any part thereto.

22.  That [Credit Union] claims a first lien upon the proceeds from the sale of said McCormick Tractor and 1999 GMC Suburban.

23.  At the time of filing, Debtors owed [Credit Union] in excess of $1.3 million (Docket 1, Schedule D).

24.  Debtors' obligation to [Credit Union] was secured by, among other things, "farm machinery," which was first perfected by filing a financing statement with the South Dakota Secretary of State on June 11, 2002 . . . and thereafter by filing a financing statement on May 23, 2007, with the South Dakota Secretary of State, securing "all equipment and inventory now owned or hereafter acquired necessary for farming and operating a guide business." . . .

25.  The Trustee's Motion To Sell Free And Clear Of Liens, dated August 20, 2009 [(doc. 40)], provided as follows:

> 3.  The Trustee proposes to sell the property at public auction, to be conducted by the Fischer Auction Company, on September 26, 2009, at 10:02 a.m., at 36675 131st Street, Mina, South Dakota, on the following terms:
>
>> a.  The sale will be free and clear of liens.  Any liens on the property sold will attach to the proceeds of sale, except that upon receipt of the sale proceeds as described below, [Credit Union] will satisfy in full its lien or liens upon the property described above (but not upon other property).
>
>> b.  [Credit Union] hold a first lien on the property.  There are no other liens on the property.
>
> 4.  Forthwith after receiving the sale proceeds, the Trustee will remit to the secured creditor, [Credit Union], the full purchase price less:  (a) any costs for which this estate is liable, such as auctioneering fees and expenses; and (b) 3% of the gross sale

price, which will become property of this estate for normal
bankruptcy administration.

and included the sale of the following:

1999 Chevrolet Suburban, 4x4, 112,358 miles; and

McCormick MTX-125 Tractor, MFWD, 3-pt., 3 hyd., GB 760
loader, scoop & grapple-fork, 2,420 hrs.

26.  Notice Of Motion To Sell Free And Clear Of Liens was given to all
creditors, including [Bank], pursuant to the Notice of Motion dated
August 20, 2009 [(doc. 40-1)] and Certificate of Service [(doc. 40-2)].
Objections were due September 14, 2009.  No objections were filed.

27.  Pursuant to Order dated September 24, 2009 [(doc. 66)], the Court
approved the Trustee's Motion.

28.  Fischer Auction Company was retained by the Trustee to conduct
the Sale.  The only McCormick Tractor sold by the Trustee was as
follows:

2003 McCormick MTX-125 Tractor with loader serial number
ZT25AC4JJE3332034, MFWD, 3 PT., 3 HYD., GB 760
Loader, Scoop and Grapple Fork, 2,420 hours . . . .

29.  An MTX120 and an MTX125 are two separate tractor models
manufactured by McCormick Tractor.  The MTX120 was manufactured
from 2004 to 2008.  The MTX125 was manufactured from 2001 to
2003 . . . .

II.

This Court has subject-matter jurisdiction over civil proceedings "arising under

title 11," "arising in a case under title 11," or "related to a case under title 11."  *GAF*

*Holdings, LLC v. Rinaldi* (*In re Farmland Industries, Inc.*), 567 F.3d 1010, 1017 (8th Cir.

2009) (quoting 28 U.S.C. § 157(b)(1), (c)(1)).  Such civil proceedings may be either

"core" or "non-core."  *Id.* (citing *Specialty Mills, Inc. v. Citizens State Bank,* 51 F.3d

770, 773 (8th Cir. 1995)).

Core proceedings are those "arising under" title 11 or "arising in" a case under title 11.  *Id*. (citing  28  U.S.C.  §  157(b)(1)).   Such  proceedings  "arise  only  in bankruptcy or involve a right created by federal bankruptcy law."  *Specialty Mills*, 51 F.3d at 773 (citing *Wood v. Wood* (*In re Wood*), 825 F.2d 90, 97 (5th Cir. 1987)). They include, but are not limited to:

(A) matters concerning the administration of the estate;

(B) allowance or disallowance of claims against the estate or exemptions from property of the estate, and estimation of claims or interests for the purposes of confirming a plan under chapter 11, 12 or 13 of title 11 but not the liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims against the estate for purposes of distribution in a case under title 11;

(C) counterclaims by the estate against persons filing claims against the estate;

(D) orders in respect to obtaining credit;

(E) orders to turn over property of the estate;

(F) proceedings to determine, avoid, or recover preferences;

(G) motions to terminate, annul, or modify the automatic stay;

(H) proceedings to determine, avoid, or recover fraudulent conveyances;

(I) determinations as to the dischargeability of particular debts;

(J) objections to discharges;

(K) determinations of the validity, extent, or priority of liens;

(L) confirmations of plans;

(M) orders approving the use or lease of property, including the use of cash collateral;

(N) orders approving the sale of property other than property resulting

from claims brought by the estate against persons who have not filed
claims against the estate;

(O) other proceedings affecting the liquidation of the assets of the estate
or the adjustment of the debtor-creditor or the equity security holder
relationship, except personal injury tort or wrongful death claims; and

(P) recognition of foreign proceedings and other matters under chapter
15 of title 11.

28 U.S.C. § 157(b)(2).  The debtor or the trustee is almost always a party to a core

proceeding.  *See Abramowitz v. Palmer*, 999 F.2d 1274, 1277 (8th Cir. 1993) (citing

*Marine Iron & Shipbuilding Company v. City of Duluth* (*In re Marine Iron & Shipbuilding*

*Company*), 104 B.R. 976, 980 (D. Minn. 1989) ("In general, a core proceeding is a

legal dispute between parties in interest to a bankruptcy case, one of whom is almost

always the debtor.")).

Non-core, "related to" proceedings, on the other hand, do not involve a

substantive right created by federal bankruptcy law and could exist outside a

bankruptcy case.  *Specialty Mills,* 51 F.3d at 773-74 (citing *Wood*, 825 F.2d at 97).

However, such proceedings must have some effect on the administration of the

bankruptcy estate.  *Id.* at 774 (quoting therein *Dogpatch Properties, Inc. v. Dogpatch*

*U.S.A., Inc.* (*In re Dogpatch U.S.A., Inc.*), 810 F.2d 782, 786 (8th Cir. 1987)(quoting

therein *Zweygardt v. Colorado Nat. Bank*, 52 B.R. 229, 233 (Bankr. D. Colo. 1985))).

[T]he test for determining whether a civil proceeding is related to
bankruptcy is whether the outcome of that proceeding could conceivably
have any effect on the estate being administered in bankruptcy . . . An
action is related to bankruptcy if the outcome could alter the debtor's
rights, liabilities, options, or freedom of action . . . and which in any way
impacts upon the handling and administration of the bankrupt estate.

*Id.* (quoting therein *Dogpatch*, 810 F.2d at 786).  A third-party dispute that does not

affect either the distribution of estate assets or the bankruptcy estate in general is not "related to" a bankruptcy. *Digeo, Inc. v. Chang* (*In re IPDN Corp.*), 352 B.R. 870, 877 (Bankr. E.D. Mo. 2006) (citing *Educational Credit Management Corp. v. McAlpin* (*In re McAlpin*), 263 B.R. 881, 884 (B.A.P. 8th Cir. 2001) (citing *Specialty Mills*, 51 F.3d at 774)).

Parties to a civil proceeding may not consent to subject-matter jurisdiction or waive the lack of subject-matter jurisdiction.

> The federal courts' limited jurisdiction is a creature purely of statute. A federal court either has jurisdiction under statute, or it does not. A federal court may not exercise decision-making authority absent a basis in statute. Parties to a lawsuit may not consent or acquiesce to a federal court's jurisdiction where there is no such basis.

*Holmes v. Deutsche Bank National Trust Company* (*In re Holmes*), 387 B.R. 591, 597 (Bankr. D. Minn. 2008)(citations therein). Moreover, the Court has an independent duty to determine whether it has subject-matter jurisdiction. *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990). If it determines it lacks subject-matter jurisdiction, the Court must dismiss the civil proceeding. Fed.R.Bankr.P. 7012.[1]

### III.

This adversary proceeding does not "arise under" title 11. Adversary proceedings "arising under" title 11 "involve a cause of action created or determined by a statutory provision of title 11." *GAF Holdings*, 567 F.3d at 1018 (quoting *Wood*, 825 F.2d at 96). By its complaint, Bank is seeking, in its own words, a determination

---

[1] Rule 7012 incorporates by reference Fed.R.Civ.P. 12(h)(3), which provides, "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."

under the Uniform Commercial Code, as codified in the South Dakota Codified Laws, that its liens against the funds paid to Credit Union are superior to those of Credit Union against the same funds.  Bank's cause of action does not implicate any provision of title 11.

This adversary proceeding does not "arise in" a case under title 11, either.  Adversary proceedings "arising in" a case under title 11 involve "claims that by their nature, *not their particular factual circumstance*, could only arise in the context of a bankruptcy case."  *Id.* (quoting *Stoe v. Flaherty*, 436 F.3d 209, 218 (3rd Cir. 2006)) (emphasis added).  At first blush, Bank's complaint to determine the priority of its liens would appear to be such a claim under 28 U.S.C. § 157(b)(2)(K).  However, Bank's dispute is with Credit Union, not Debtors or the chapter 7 trustee, as evidenced by the fact neither Debtors nor the chapter 7 trustee were named as defendants in this adversary proceeding, and the dispute is over funds that have been paid over to Credit Union and are thus no longer property of Debtors or the bankruptcy estate.[2]  This renders § 157(b)(2)(K) inapposite.

> The fact that [an] action is a section 157(b)(2) "core proceeding" does not end the matter[,] however.  Generally, in order for federal subject[-]matter jurisdiction to obtain in a bankruptcy case, the dispute must be in some way connected to property of the debtor or the debtor's estate.  Whether characterized as a civil proceeding arising under Title 11 or a case under Title 11 or as a related case, the bankruptcy court may not exercise jurisdiction over claims which involve neither the debtor as a

---

[2] Contrary to the suggestion in Credit Union's brief, the dispute is not over "the proper interpretation of this Court's Order of September [24], 2009" approving the chapter 7 trustee's sale of the personal property against which both Bank and Credit Union asserted liens (doc. 66).  Nothing in the pleadings or the parties' stipulated facts suggests the Court's order requires interpretation.

party nor assets or liabilities of the debtor's estate.

*Minstar, Inc. v. Plastech Research, Inc.* (*In re Arctic Enterprises, Inc.*), 68 B.R. 71, 76 (D. Minn. 1986) (citations omitted).

Finally, this adversary proceeding is not "related to" a case under title 11. "Related to" jurisdiction is extremely broad, *GAF Holdings*, 567 F.3d at 1019 (citing *Continental Nat. Bank v. Sanchez* (*In re Toledo*), 170 F.3d 1340, 1345 (11th Cir. 1999)), but it is not limitless.  "[B]ankruptcy courts have no jurisdiction over proceedings that have no effect on the debtor."  *Celotex Corporation v. Edwards*, 514 U.S. 300, 308 n.6 (1995) (quoted in *GAF Holdings*, 567 F.3d at 1019).  Nothing in the pleadings or the parties' stipulated facts suggests the outcome of this adversary proceeding could have any conceivable effect on Debtors or the bankruptcy estate.

Because this adversary proceeding does not "arise under" title 11, "arise in" a case under title 11, or "relate to" a case under title 11, the Court does not have subject-matter jurisdiction and must enter an order dismissing it.

Dated:  October 5, 2010.

BY THE COURT:

Charles L. Nail, Jr.
Bankruptcy Judge

**NOTICE OF ENTRY**
**Under Fed.R.Bankr.P. 9022(a)**

This order/judgment was entered
on the date shown above.

Frederick M. Entwistle
Clerk, U.S. Bankruptcy Court
District of South Dakota